# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH FACEBOOK<br>USER ID 100053155522643 THAT IS STORED AT<br>PREMISES CONTROLLED BY FACEBOOK INC. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:23MJ138-1 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A) | Dealing in firearms without a license |

The application is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ MATTHEW LAVALLEY
*Applicant's signature*

_____
MATTHEW LAVALLEY, ATF TFO
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: _____ 03/17/2023   2:23 pm _____

_____
*Judge's signature*

City and state: _____ Durham, North Carolina _____

Honorable Joe L. Webster, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF

## AN APPLICATION FOR A SEARCH WARRANT

I, Matthew J. La Valley, a Task Force Officer with the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(l)(A) and 2703(c)(l)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since December 7, 2018, as well as a Police Officer with the Winston-Salem Police Department, and have been since June 10, 2013. I have also completed additional training for Drug Enforcement for Patrol Officers, as well as Narcotic Investigation

1

Techniques. Your affiant has made or participated in over 300 arrests for narcotic violations.

3.     During my employment with ATF, I have been personally involved in several firearms trafficking, manufacturing, and possession cases. My training and experience in the investigation of the illegal possession and trafficking of firearms has provided me with information concerning the normal patterns and procedures through which individuals acquire, store, maintain, and/or manufacture firearms. I have had discussions with senior ATF agents with further experience and/or expertise in conducting investigations related to individuals who unlawfully possess and traffic in firearms. As a result of my own personal experiences, the training I have received, and the information that I have obtained from working with other experienced ATF agents, I am familiar with violations of Federal Firearms Laws.

4.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe the information sought in this warrant will reveal evidence of a violation of:

2

18 U.S.C. § 922(a)(1)(A), which prohibits any person from willfully engages in the business of dealing in firearms; without having a federal firearm license.

6.     Additionally, I am aware through my training and experience that:

a.     Persons involved in the unlawful sale, possession, and/or manufacture of firearms often take photographs or videos of themselves with firearms and post these photographs and videos on social media platforms such as Facebook and Instagram.

b.     Persons often utilize social media platforms to send text messages, direct messages, or video chat, in reference to their unlawful possession, manufacture, and/or acquisition of firearms.

7.     I believe there is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

8.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(l)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States ... that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.    During the year 2022, TFO La Valley began observing an influx of firearm recoveries tracing back to a particular firearm purchaser, identified as Teryion Freddy Marquis WILLIAMS. On October 25, 2022, TFO La Valley, TFO Van Kuren and SA Russell Johnson reviewed ATF'S eTrace system for purchases made by WILLIAMS.   During their review, SA/TFOs observed WILLIAMS has seven (7) previous multiple sales of firearms totaling sixteen (16) firearms and fifteen (15) total traces.

8.    In reviewing the traces, several traces had a short time-to-crime, (the time from purchase until recovery by law enforcement) to include but not limited to 8 days, 8 days, 17 days, 28 days, 53 days, and 76 days.  Based on TFO La Valley's training and experience, he knows it is a common trend for high-volume straw purchasers to have short time-to-crime amounts on their recoveries.

4

9.    During the course of the investigation into WILLIAMS resulted in TFO La Valley executing a federal search warrant on WILLIAMS Facebook account. Upon receipt of the results from the search warrant, TFO La Valley reviewed the communication between WILLIAMS and several other Facebook accounts that related to the purchase/possession of firearms.

10.    TFO La Valley observed a Facebook message thread involving WILLIAMS and "Tyquan Glover" (Facebook Account 100021813615430), hereinafter referred to as "FB 5430", in which substantial conversation regarding firearm sales is discussed. The Facebook profile description for GLOVER is seen below:



11.    TFO La Valley queried Tyquan GLOVER through a police database "Police2Police" and located a male living in Winston-Salem, North

Carolina with the name Tyquan GLOVER and a date of birth of March 22, 2000, the same name and date of birth as indicated on the Facebook account for "Tyquan Glover." A query GLOVER's driver's license through NCIC revealed a North Carolina driver's license photo in which GLOVER and pictures in the account for "Tyquan Glover" appear to be the same individual.



12.     TFO La Valley is familiar with GLOVER. TFO La Valley discovered fifteen (15) firearm traces for firearms purchased by GLOVER that had been recovered by law enforcement. In five (5) instances the time between GLOVER purchasing the firearm and the firearm being recovered by law enforcement has had dates less than ninety (90) days. On those specific occasions the time-to-crime was 1 day, 35 days, 59 days, 64 days, and 87 days. The dates for those traced purchases are between January 7, 2022, to November 6, 2022. GLOVER also has a reported total of nine (9) multiple sales of firearms, totaling twenty-seven (27) firearms, ranging from January 23,

6

2022, to November 22, 2022. Between multiple sales, firearms traced and Agents obtaining ATF Form 4473's from Atlas Firearms (FFL: 15606477), TFO La Valley knows GLOVER has purchased at least 43 firearms between May 10, 2021, to December 1, 2022.

13.     The relevant Facebook messenger conversation concerning firearm sales between WILLIAMS and GLOVER's account FB 5430, begin on December 11, 2019, when WILLIAMS asks, "still selling yo pole". The undersigned believes the term "pole" to be slang for firearm. GLOVER responds, "its gone" and that "travis sold it". WILLIAMS then asks, "how much you sell it fo" and GLOVER responds "$225".

14.     On May 22, 2020, GLOVER, using FB 5430, messages WILLIAMS trying to sell WILLIAMS a shotgun. During the conversation GLOVER states, "Ima give it to you or trevis". Eventually GLOVER and WILLIAMS agree to terms on the price of the shotgun.

15.     On June 22, 2020, GLOVER, using FB 5430, messages WILLIAMS stating, "Tell sumbody you got a glock for sell", which WILLIAMS responds "Ain't putting my face on that" and "better get a lil nigga", which GLOVER states "you ain't got to".

16.     During GLOVER's conversations with WILLIAMS while using FB 5430, GLOVER references a subject named "Trevis" on multiple occasions, indicating GLOVER is selling firearms and/or providing firearms to "Trevis".

7

TFO La Valley is familiar with a Trevis ORR HERRING, who is involved in a separate investigation conducted by TFO La Valley for possession of firearm by felon. In that investigation, ATF undercover agents purchased a firearm from HERRING on two separate occasions.

17.     Most significantly, on October 25, 2022, ATF conducted a controlled purchase from HERRING for a Palmetto State Armory, Model Dagger Compact 9-millimeter pistol bearing serial # JJE37096 and a box of ammunition containing thirty-nine (39) rounds of .40 caliber ammunition for $600.00 of ATF Agent Cashier Funds.



18.     On December 27, 2022, TFO VanKuren obtained the ATF ETrace results from the firearm purchased from HERRING on October 25, 2022.

19.     According to the ETrace the firearm was purchased on October 24, 2022, by GLOVER at Longs Pawn and Jewelry (FFL 15613368), indicating the firearm was purchased one day prior to the UC interaction where it was taken into ATF custody.

20. On Friday, February 17, 2023, this Affiant submitted a preservation request to Meta Platforms Inc., for FB 5430.

21. As TFO La Valley continued reviewing WILLIAMS Facebook messages, he located an additional Facebook profile that GLOVER appeared to be utilizing, with the moniker "NoKuttz Ace" (FACEBOOK ACCOUNT 100053155522643), hereinafter referred to as "FB 2643". The thread between WILLIAMS and the FB 2643 showed to be opened on January 16, 2022.



22. TFO La Valley was able to identify the subject utilizing the FB 2643 as Tyquan Glover by reviewing images from the profile as well as the listed URL for the Facebook page (www.facebook.com/tyquan.glover.186).

23. The conversation between GLOVER and WILLIAMS on the FB 2643 also involve the transfer of firearms and indicative of both WILLIAMS and GLOVER being engaged in the business of firearm sales without a license.

9

24. On February 4, 2022, GLOVER, using FB 2643, messages WILLIAMS asking, "you know any that's trynna buy a hellcat pistol", stating he wanted $550 cash for the firearm and subsequently sent a photograph of the firearm to WILLIAMS. During the conversation, the price of the firearm was negotiated down to $500. WILLIAMS appears to be a middleman for GLOVER's firearm sale, stating a subject only identified as "Migo" was interested in purchasing the firearm. The following photo is an excerpt from WILLIAMS Facebook search warrant return.



25. On February 13, 2022, GLOVER, using FB 2643, sends a photograph of a fireram, an F.N. Herstal handgun, to WILLIAMS with "1300"

on the image, indicating GLOVER was stating the firearm would cost $1,300 to purchase same.



26. On August 16, 2022, GLOVER, using FB 2643, messaged WILLIAMS asking "was you trynna buy a gun?", which WILLIAMS replied "Glocks".

27. On Friday, December 23, 2022, this Affiant submitted a preservation request to Meta Platforms Inc., for FB 2643.

28. On February 23, 2023, TFO La Valley requested IOI K. Shultz conduct a Federal License System (FLS) query to determine if GLOVER was a Federal Firearms Licensee (FFL). IOI K. Shultz informed TFO La Valley that GLOVER did not possess an FFL.

29.     Based on the above information, there is probable cause to believe that violations of 18 U.S.C. § 922(a)(1)(A) dealing without a license, have been committed, are being committed, and/or will continue to be committed by GLOVER and evidence thereof exists within the posts, photographs, messages, and other data pertaining to the FACEBOOK ACCOUNT, FB 5430 and FB 2643.

## BACKGROUND CONCERNING FACEBOOK

30.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

31.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

32.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.

12

Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

33.    Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

34.    Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the

13

Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

35. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

36. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

Case 1:23-mj-00138-JLW   Document 1   Filed 03/17/23   Page 15 of 27

37. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

38. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

39. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

40. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

41. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

42. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook

15

platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

43.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

44.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

45.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

16

46.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may

17

tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

47.    Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

48.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(l)(A) and 2703(c)(l)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

18

## CONCLUSION

49.     Based on the foregoing, I request that the Court issue the proposed search warrant.

50.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,
/S/ Matthew La Valley
Matthew La Valley
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and
Explosives

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 17th day of March, 2023, at 2:23 pm.

JOE L. WEBSTER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A
## Property to Be Searched

This warrant applies to information associated with Facebook account 100053155522643 (active on January 7, 2022,) that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

**ATTACHMENT B**
**Particular Things to be Seized**
I.  **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on December 23, 2022, (Meta Case Number 7444783) Meta is required to disclose the following information to the government for each user ID listed in Attachment A;

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 7, 2022, to March 13, 2023;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them January 7, 2022, to March 13, 2023, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

21

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user January 7, 2022, to March 13, 2023, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked;"

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(1)     All records of Facebook searches performed by the account January 7, 2022, to March 13, 2023;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account; and

(q)     All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 USC § 922(a)(1)(A)), involving Tyquan Deshawn GLOVER since January 7, 2022, for each user ID identified on Attachment A, in the the form of;

    (a)    Records and information revealing, referencing, or constituting the manufacture, possession, and sale of firearms,

    (b)    Records and information revealing or referencing the proceeds of firearm sales;

    (c)    Records and information revealing or referencing co-conspirators and customers; and

    (d)    The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____ , attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is __ . I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)].** I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b. such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                             Signature